# LOCAL 553 PENSION FUND

## *Amended and Restated Trust Agreement*

AMENDED AND RESTATED AGREEMENT AND DECLARATION OF TRUST made and entered into in the City of New York, County of New York, and State of New York, as of March 6, 1995, by and between Local 553 affiliated with the International Brotherhood of Teamsters, hereinafter called the Union, and the Companies who are signatories hereto and who are hereinafter collectively referred to as Employers, and

| | |
|---|---|
| (EMPLOYER TRUSTEES) | (UNION TRUSTEES) |
| Robert Greenes | Bernard Pellegrino |
| Justin McCarthy | Demos Demopoulos |
| Paul Vermylen | |

who with their successors designated in the manner herein provided are called the Trustees.

WHEREAS the Union and each of the Employers have entered into a Collective Bargaining Agreement requiring payments by the Employers for the purpose of providing a pension trust fund for the employees covered by the said Agreement; and

WHEREAS to effectuate the said purposes a Trust was established on or about March 15, 1956 pursuant to an Agreement and Declaration of Trust (the "Original Trust Agreement") entered into on or about said day, and said Original Trust Agreement has been thereafter amended from time to time; and

WHEREAS, by execution and delivery of this Amended and Restated Agreement and Declaration of Trust, it is desired to amend and restate the Original Trust Agreement,

NOW THEREFORE, in consideration of the foregoing premises and the mutual agreements, covenants and undertakings herein contained, the parties hereto, intending to be legally bound, hereby amend and restate the Original Trust Agreement, as amended, in its entirety and agree as follows:

## Article I

## DEFINITIONS

SECTION 1. EMPLOYER. The term "Employer" shall mean each employer who has duly executed a Collective Bargaining Agreement and who is a signatory to this agreement, and also any employer not presently a party to such an agreement who hereafter executes such an agreement provided that such employer satisfies the requirements for participation as established by the Trustees and agrees to be bound by the terms and provisions of this Amended and Restated Agreement and Declaration of Trust, and becomes a party hereto. It shall also include the Union providing the Union makes contributions for its employees on the same basis as other Employers, but the Union shall not otherwise participate as an Employer herein.

SECTION 2.  UNION.  The term "Union" shall mean Local 553 affiliated with the International Brotherhood of Teamsters.

SECTION 3.  EMPLOYEES.  The term "Employees" shall mean all of the employees of an Employer who are covered by the Collective Bargaining Agreement in effect between the Employer and the Union and shall include retired Employees. It shall also include employees of the Union for whom contributions are made in accordance with Section 1 of this Article.

SECTION 4.  TRUSTEES.  The term "Trustees" shall mean the Trustees designated in this Amended and Restated Agreement and Declaration of Trust together with their successors designated in the manner provided herein.

SECTION 5.  TRUST AGREEMENT.  The term "Trust Agreement" or "Agreement and Declaration of Trust" shall mean this Amended and Restated Agreement and Declaration of Trust including any amendments hereto and modifications hereof.

SECTION 6.  EMPLOYER CONTRIBUTIONS.  The term "Employer Contributions" shall mean payment by Employers to the Trustees pursuant to Collective Bargaining Agreements.

SECTION 7.  PENSION TRUST FUND.  The term "Pension Trust Fund" shall mean the trust fund created by this Trust Agreement.

SECTION 8.  COLLECTIVE BARGAINING AGREEMENT.  The term "Collective Bargaining Agreement" shall mean any written collective bargaining agreement between the Union and an Employer which requires contributions by the Employer to the Trust.  It shall also mean a written agreement by the Union with the Trustees to contribute for its Employees in accordance with Section 1 of this Article above.

SECTION 9.  TRUST.  The term "Trust", "Trusts", "Trust Fund", and "Trust Funds" shall mean the trust created by this Trust Agreement.

SECTION 10.  HOUR PAID FOR.  The term "Hour paid for" shall mean each and every hour for which the Employer is required to make payment under a Collective Bargaining Agreement.

SECTION 11.  INVESTMENT MANAGER.  The term "Investment Manager" shall mean any fiduciary who has been designated by the Trustees to manage, acquire, or dispose of any assets of the Funds, who is registered as an investment adviser under the Investment Advisers Act of 1940, is a bank as defined in that Act or an insurance company qualified to perform services under the laws of more than one state and who has acknowledged in writing that he is a fiduciary with respect to the Plan.

SECTION 12.  PENSION PLAN.  The term "Pension Plan" shall mean the rules and regulations adopted by the Trustees with respect to pension benefits and eligibility provided under the Pension Fund.

## Article II

### PURPOSES OF TRUST

SECTION 1.  The Union and the Employer hereby create and establish with the Trustees hereinafter designated in Article III hereof a Trust to be known as the "Local 553 Pension Fund," which shall comprise the entire assets initially derived from Employer Contributions together with all investments and income derived therefrom.

SECTION 2.  The Trustees agree to receive all such Employer Contributions and other properties and assets and to hold the same in trust hereunder for the

2

uses and purposes of the Trust created by this Article II.

SECTION 3. The Local 553 Pension Fund is created and established for the purpose of providing and maintaining pension and retirement benefits for Employees.

The Trustees shall promptly agree upon and formulate the provisions, regulations and conditions of the pension program herein contemplated, including those relating to eligibility of Employees, retirement age and other terms required to carry out the intent and purposes of the pension program required by the Collective Bargaining Agreement and any or all other matters relating thereto which the Trustees may deem appropriate for the determination of retirement benefits and the administration of the pension program. A copy of such Pension Plan shall be adopted and filed by the Trustees as part of the records and minutes of the Trustees.

The Trustees shall have the power to construe the provisions of such pension plan and the terms used therein, and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Employers, the employees and the Plan's beneficiaries. The Trustees shall be the sole judges of the standard of proof required in any pension matter and the application and interpretation of such Plan and the decisions of the Trustees made in good faith shall be final and binding on the Union, the Employers, the employees and the Plan's beneficiaries.

The Trustees may amend such Plan from time to time, provided that such amendments comply with the purposes above stated. A copy of each such amendment shall be adopted and filed by the Trustees as part of the records and minutes of the Trustees.

The Pension Plan to be formulated by the Trustees under this Article II shall be such as to qualify under the Internal Revenue Code, as amended, so that contributions of Employers to the Pension Trust Fund will be deductible by such Employers for tax purposes under said Code, and approval of such plan by the United States Treasury Department shall be obtained. Amendments thereto shall be made by the Trustees when necessary to secure or retain such approval. The administration of such Plan and its terms and provisions, as amended from time to time, shall be such that it shall at all times be qualified under the Internal Revenue Code.

SECTION 4. The Trustees shall use and apply the Pension Trust Fund for the following purposes and no other:

(a)   To pay or provide for the payment of all reasonable and necessary expense of collecting the Employer Contributions and administering the affairs of the Pension Trust Fund, including but without limitation all expenses which may be incurred in connection with the establishment and maintenance of the Pension Trust Fund, the employment of such administrative, legal, actuarial, accounting and other expert and clerical assistance, the leasing of such premises and the purchase or lease of such materials, supplies and equipment as the Trustees, in their discretion, find necessary or appropriate in the performance of their duties.

(b)   To pay or provide for the payment of retirement or other benefits to eligible Employees in accordance with the terms, provisions and conditions of the Pension Plan to be formulated and agreed upon hereunder.

## Article III

### THE TRUSTEES

SECTION 1. The Trustees under this Trust Agreement, who shall be Trustees

of the Trust created and established by Article II hereof, shall be five in number, two of whom shall be Union Trustees and three of whom shall be Employer Trustees.

SECTION 2.  The two Union Trustees shall be Bernard Pellegrino and Demos Demopoulos.

SECTION 3.  The three Employer Trustees, designated on behalf of all Employers, shall be Justin McCarthy and Robert Greenes, designated by the New York Oil Heating Association, Inc.; Paul Vermylen, designated by the Oil Heat Institute of the Bronx, Inc. and the Fuel Industry Committee-Nassau/Suffolk.

SECTION 4.  The Trustees above named hereby accept the Trust created and established by this Trust Agreement and consent to act as Trustees therefor.  The signature of a Trustees to any counterpart or copy of this Trust Agreement shall be conclusive evidence of his acceptance as aforesaid.

SECTION 5.  Each Trustee above named and each successor Trustee shall continue to serve as such until his death, incapacity, resignation or removal, as herein provided.

SECTION 6.  A Trustee may resign and become and remain fully discharged from all further duty or responsibility hereunder upon giving thirty days' notice in writing to the remaining Trustees, or such shorter notice as the remaining Trustees may accept as sufficient, in which notice there shall be stated a date when such resignation shall take effect, and such resignation shall take effect on the date specified in the notice unless a successor Trustee shall have been appointed at an earlier date, in which event such resignation shall take effect immediately upon the appointment of such successor Trustee.

SECTION 7.  (a) In case an Employer Trustee or successor Employer Trustee shall die, become incapable of acting, resign, or be removed, a successor Employer Trustee shall immediately be designated by the Association or Associations which designated his predecessor.  Upon the filing with the remaining Trustees of a certificate in writing signed by the President of said Association or Associations, said designation shall be effective and binding in all respects.  Any Employer Trustee or successor Employer Trustee may be removed at any time by the Association or Associations which designated him by the filing with the remaining Trustees of a certificate in writing to such effect executed by the President of such Association or Associations.

The Union shall under no circumstances participate in the election of Employer Trustees.

(b)  In case any Union Trustee shall die, become incapable of acting, resign or be removed, a successor Union Trustee shall be immediately designated by the Executive Board of the Union.  Upon the filing with the remaining Trustees of a certificate in writing signed by the President or Secretary-Treasurer of the Union, such designation shall be effective and binding in all respects.  Any Union Trustee or successor Union Trustee may be removed at any time by the Union by filing with the remaining Trustees a certificate in writing to such effect executed by the President or Secretary-Treasurer of the Union.

(c)  It is the intention hereof that the Pension Trust Fund shall at all times be administered by the number of Employer Trustees and Union Trustees above stated but in the event of a vacancy or vacancies, until the designation of a successor Trustee or Trustees as hereinabove provided, the remaining Trustees shall have full power to act and shall act.

SECTION 8.  Any successor Employer Trustee or any successor Union Trustee shall immediately upon his designation as a successor Trustee and his acceptance of the trusteeship in writing, filed with the Trustees, become vested with all

4

the property, rights, powers, and duties of a Trustee hereunder with the like effect as if originally named as a Trustee and all the Trustees then in office and the insurance carrier of each policy and all other necessary persons shall be immediately notified.

**Article IV**

**ADMINISTRATION OF THE TRUST**

SECTION 1.  The Trustees are authorized and empowered to lease or purchase such premises, materials, supplies and equipment, and to hire and employ and retain such legal counsel, investment counsel, administrative, accounting, actuarial, clerical and other assistants or employees as in their discretion they may find necessary or appropriate in the performance of their duties.

SECTION 2.  The Trustees shall have the power to construe the provisions of this Trust Agreement and the terms used herein and any construction adopted by or any decision made by the Trustees in good faith shall be binding upon the Union, the Employers, the employees and the Plan's beneficiaries.

SECTION 3.  The Trustees are hereby empowered, in addition to such other powers as are set forth herein or conferred by law:

(a)  To invest and reinvest such part of the Pension Trust Fund as in their sole judgment is advisable and is not required for current expenditures in such securities (of any classification) or such other property as they may select in their sole discretion whether or not the same be authorized by law for the investment of trust funds generally.

(b)  To purchase, sell, exchange, lease, convey or dispose of any property, whether real or personal, at any time forming a part of the Trust Fund upon such terms as they may deem proper and to execute and deliver any and all instruments of conveyance and transfer in connection therewith.

(c)  To vote in person or by proxy upon securities held by the Trustees and to exercise by attorney any other rights of whatsoever nature pertaining to securities or any other property at any time held by them hereunder.

(d)  To exercise options, conversion privileges, or right; to subscribe for additional securities and to make payments therefor.

(e)  To consent to or participate in dissolutions, reorganizations, bankruptcies, consolidations, mergers, sales, leases, mortgages, transfer or other changes affecting securities held by them and in connection therewith, and to pay assessments, subscriptions or other charges.

(f)  To enter into any and all contracts and agreements for carrying out the terms of this Trust Agreement and for the administration of the Trust Fund and to do all acts as they, in their discretion, may deem necessary or advisable, and such contracts and agreements and acts shall be binding and conclusive on the parties hereto and on the employees involved.

(g)  To compromise, settle, arbitrate and release claims or demands in favor of or against the Trust on such terms and conditions as the Trustees may deem advisable.

(h)  To keep property and securities registered in the name of the Trustee or in the name of a nominee or nominees or in unregistered or bearer form.

(i)  To keep property or securities in the custody of a bank or trust company.

5

(j)  To establish and accumulate as part of the Trust Fund a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purposes of such Trust.

(k)  To borrow money in such amounts and upon such terms and conditions as shall be deemed advisable by the Trustees or proper to carry out the purposes of the Trust and to pledge any securities or other property for the repayment of any such loans.

(l)  To hold part or all of the funds of the Trust uninvested.

(m)  To pay out of the funds of the Trust all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Trust Fund or any money, property or securities forming a part thereof.

(n)  To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder.

SECTION 4.  The Trustees shall not receive compensation for the performance of their duties.

SECTION 5.  The Trustees shall promulgate such requirements for the participation of new Employers in this Trust Agreement and such other rules and regulations as may in their discretion, be deemed proper and necessary for the sound and efficient administration of the Trust, provided that such requirements, rules and regulations are not inconsistent with this Trust Agreement.

SECTION 6.  Neither the Trustees nor any individual or successor Trustee shall be personally answerable or personally liable for any liabilities or debts of the Pension Trust Fund contracted by them as such Trustees, or for the nonfulfillment of contracts, but the same shall be paid out of the Trust Fund and the Trust Fund is hereby charged with a first lien in favor of such Trustees for his or their security and indemnification for any amount paid out by any such Trustee for any such liability and for his and their security and indemnification for the reasonable costs, expenses and counsel fees imposed, paid or incurred in connection with any action, suit or proceeding to which any such Trustee may be made a party by reason of his having been a Trustee and for any amount paid out by any such Trustee for any such liability and for his and their security and indemnification against any liability of any kind which the Trustees or any of them may incur hereunder; provided, however, that nothing herein shall exempt any Trustee from liability arising out of his own misconduct or entitle such Trustee to indemnification for any amount paid or incurred as a result thereof.

SECTION 7.  The Trustees are hereby empowered to do all acts whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objectives of maintaining the Pension Plan solely in the interests of the participants and beneficiaries for the exclusive purpose of (a) providing benefits to participants and beneficiaries; and (b) defraying reasonable expenses of administering the Plan.  Such actions shall be taken with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  Such actions shall include the diversification of the investments so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so, and all such action shall be in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with applicable law.

SECTION 8.  The Trustees shall be fully protected in acting upon any instrument, certificate or paper believed by them to be genuine and to be signed

6

or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained. The Trustees shall not be liable for the proper application of any part of the Pension Trust Fund or for any other liabilities arising in connection with the administration or existence of the Trust Fund in this Trust Agreement except as herein provided.

SECTION 9. The Trustees may from time to time consult with the Trust's legal counsel and shall be entitled to rely upon such advice of counsel to the Trust as respects legal questions. The Trustees may from time to time consult with the Trust's actuarial and insurance consultants and shall be entitled to rely upon their advice as respects actuarial and insurance questions. The Trustees may from time to time consult with the Trust's certified public accountants and shall be entitled to rely upon their advice as to accounting questions.

SECTION 10. The Trustees may delegate to a subcommittee of the Trustees consisting of an equal number of Employer and Union Trustees or to a person or persons other than Trustees authority to review and make determinations with respect to eligibility for benefits or to carry out other specified fiduciary duties.

SECTION 11. The Trustees may appoint an Investment Manager or Managers to manage, acquire, or dispose of any assets of the Fund. Such an Investment Manager may or may not be designated a "Corporate Trustee" or "Corporate Agent."

SECTION 12. If an Investment Manager or Managers has been appointed in accordance with the terms of this Trust Agreement, no Trustee shall be liable for the acts or omissions of such Investment Manager or Managers or under an obligation to invest or otherwise manage any asset of the Plan which is subject to the management of such Investment Manager.

SECTION 13. The Trustees may authorize the purchase of insurance for themselves collectively and individually and for any other fiduciary employed by the Trustees to cover liability or losses occurring by reason of the act or omission of a fiduciary, subject to the limitations of the Employee Retirement Income Security Act of 1974, as amended.

SECTION 14. The Trustees shall keep true and accurate books of account and records of all their transactions, which shall be open to the inspection of each of the Trustees at all times and which shall be audited at least annually by a certified public accountant selected by the Trustees. Such audits shall be available at all times for inspection by the Union and the Employers at the principal office of the Trust.

SECTION 15. (a) Questions concerning any action to be taken by the Trustees pursuant to this Trust Agreement shall be decided in the following manner: The entire group of Employer Trustees shall have one vote and the entire group of Union Trustees shall have one vote.

The one vote of the Union Trustees shall be cast in accordance with the decisions of the majority of said Union Trustees.

The one vote of the Employer Trustees shall be cast in accordance with the decision of the majority of said Employer Trustees.

At least a total of two affirmative votes must be cast by Employer Trustees to determine the one vote of the entire group of Employer Trustees.

At least a total of two affirmative votes must be cast by Union Trustees to determine the one vote of the Union Trustees.

7

There must be present at any meeting at which any action is taken at least two Union Trustees and at least two Employer Trustees. Any and all action taken at such a meeting in the manner above provided shall have the same effect and force as if taken by all of the Trustees.

(b)    In the event of a deadlock, the question shall be submitted for decision to a neutral person selected by the Trustees. In the event of their inability to agree upon a neutral person, such neutral person shall be selected from a list of arbitrators to be furnished by the American Arbitration Association in each case. If no arbitrator on such list is mutually acceptable to the Trustees, the arbitrator shall be designated by the American Arbitration Association.

In each instance when the American Arbitration Association is required to furnish a list of arbitrators, or when the American Arbitration Association is requested to designate an arbitrator, the American Arbitration Association shall be advised of the nature of the dispute and shall be requested to furnish a list of arbitrators who are qualified and competent by training and experience to decide the particular issued involved.

The decision of such neutral person shall be final and binding and shall be adopted by the Trustees and deemed to be the vote of the Trustees. The cost and expense incidental to any proceedings needed to break a deadlock shall be borne by the Pension Trust Fund.

Any neutral persons chosen or designated to break a deadlock shall be required to render his decision within the time limits fixed by the Trustees. The scope of any arbitration proceeding before such neutral person shall not infringe upon the area of basic provisions agreed upon in the Collective Bargaining Agreement, nor shall such neutral person have power or authority to change or modify such basic provisions.

(c)    A deadlock shall be deemed to exist whenever the Trustees are unable to reach an agreement at a meeting after duly voting according to the voting procedure hereinabove set forth. A deadlock shall also be deemed to exist whenever the lack of a necessary quorum of Trustees continues for two successive meetings of the Trustees, or where at two successive meetings the minimum number of affirmative votes needed to cast the vote of the Employer Trustees or of the Union Trustees cannot be obtained.

SECTION 16. The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees jointly to execute any notice or other instrument in writing and all persons, partnerships, corporations or associations may rely thereupon that such notice or instrument has been duly authorized and is binding on the Trust and the Trustees.

SECTION 17(a).    All monies received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose and all withdrawals of monies from such account or accounts shall be made only by checks signed by the Trustees, authorized in writing by the Trustees to sign such checks. Except as hereinafter provided, no check shall be valid unless signed by two persons of whom one shall be a Union Trustee and one an Employer Trustee.

(b)    The Employer Trustees shall designate in writing the names of the particular Employer Trustees who may sign checks in the above manner, and the Union Trustees shall likewise designate in writing the names of the particular Union Trustees who may sign checks in the above manner.

(c)    The Trustees may, in their discretion, designate and authorize an employee of the Trust to sign checks upon such separate and specific bank account

8

or bank accounts as the Trustees may designate and establish for such purpose.

SECTION 18. The Trustees may, in their discretion, at any time or from time to time, but shall not less frequently than once each year beginning with the period ending December 31, 1956, render written accounts of their transactions and file the same with the Employers and the Union. Each of such Employers and Union and the employees involved shall be deemed to have approved any such accounts unless it shall file with the Trustees written objections thereto within sixty (60) days after receipt of such account, and in the absence of such objection the Trustees shall be released, relieved and discharged with respect to all manners and things set forth in such account as though the same had been settled by the decree of a court of competent jurisdiction.

SECTION 19. The Trustees and employees who are empowered and authorized to sign checks as aforesaid shall each be bonded by a duly authorized surety company in such amounts as may be determined from time to time by the Trustees. Each employee employed by the Trustees who may be engaged in handling monies of the Trust Fund shall also be bonded by a duly authorized surety company in the same manner. The cost of the premiums on such bonds shall be paid out of the Pension Trust Fund.

## Article V

### COLLECTION OF CONTRIBUTIONS

SECTION 1. **Obligations of Employers.** Each and every Employer shall pay to the Trustees the Contributions required by its written Collective Bargaining Agreement with the Union. The Trustees shall be entitled to demand and recover the said Contributions in their own name as Trustees for the uses and purposes herein set forth. Employer Contributions for all payroll periods ending during a calendar month must be paid no later than the 30th day of the following calendar month. Detailed reports of such payments in the form and manner and at such times as may be directed by the Trustees shall be made to the Trustees by each Employer. The initial report shall be complete in all details. Thereafter all additions, subtractions and other changes shall be reported each month concurrently with payment.

SECTION 2. **Collection by Trustees.** The Trustees shall have the power to demand, collect and receive Employer Contributions, and shall hold the same separately as part of the Pension Fund for the purposes specified in this Trust Agreement. The Trustees shall have the power to specify the exact time and manner by which Employer Contributions are to be paid to the Funds, provided that such terms are not inconsistent with the terms of the applicable collective bargaining agreements.

SECTION 3. **Records.** Each Employer shall promptly furnish to the Trustees on demand such payroll records and data with respect to individual employees as the Trustees may reasonably require in connection with the administration of the Funds.

In the event the Employer fails to submit required remittance reports when due, or fails to supply the books and records for audit within five (5) days after demand, the Trustees or their agents may compute the sum due for any month by adding 10% to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) reports submitted by the Employer (hereinafter referred to as the base month). In the event there was an audit disclosing unreported hours for the base month, the amount of said unreported hours plus 10% thereof shall be added to arrive at the total hours. The total number of hours for the unreported period as determined aforesaid shall be multiplied by the current contribution rate, and the amount of contributions so computed shall be binding on the Employer and shall be deemed the amount due from the Employer, together with the sums as calculated pursuant to Section 4, for the purpose of any legal proceeding.

SECTION 4.  Collection of Delinquent Contributions.



(a)  The Trustees shall have the right to charge an Employer interest if such Employer fails to make contributions to the Funds, for which it is obligated, on a timely basis.  Said interest shall be due on the amount of unpaid contributions as the maximum rate permitted under applicable law not in excess of 18% per annum.

(b)  In the case of an Employer that fails to make the contributions to the Funds for which it is obligated, in accordance with the terms and conditions of its obligation, the Trustees may bring an action on behalf of the Funds pursuant to Section 502(g) and 505 of ERISA to enforce the Employer's obligation.

(c)  In any action under subsection (b) in which judgment is awarded in favor of the Funds, the Employer shall pay to the Fund:

(1)  the unpaid contributions;



(2)  interest on the unpaid contributions, determined at the rate of 18% from the date due to the actual date of payment;

(3)  liquidated damages as provided in Section 502(g)(2)(c) of ERISA;

(4)  reasonable attorney's fees and costs of the action; and

(5)  such other legal or equitable relief as the court deems appropriate.

(d)  Nothing in this section shall be construed as a waiver or limitation on the Funds' or the Trustees' right to enforce an employer's contribution obligation in any other type of proceeding.

SECTION 5.  **Audits.**  The Trustees, or a representative or representatives duly authorized by the Trustees, may examine and audit payroll, employment, and any other pertinent records of any Employer with respect to Employees covered by the Funds whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Funds.  In the event that an audit reveals that an Employer has underpaid the contributions that were due to the Funds, the Employer shall immediately pay the following amounts to the Funds:

(a)  the underpaid contributions;

(b)  interest on the underpaid contributions in the amount of 1 1/2% per month of each monthly amount due for each month from the date of the underpayment to the date that it is actually paid, and

(c)  liquidated damages determined by the following schedule:

| Amount of Underpayment in Calendar Year | Amount of Liquidated Damages |
|---|---|
| 0 - 5% of annual contributions | none |
| 5 - 10% of annual contributions | 5% of amount underpaid |
| 10 - 15% of annual contributions | 10% of amount underpaid |
| 15 - 20% of annual contributions | 15% of amount underpaid |

10

over 20% of annual contributions                    20% of amount underpaid

## Article VI

### EMPLOYER WITHDRAWAL LIABILITY

SECTION 1.   In General

(a)   An employer that withdraws from the Pension Plan after September 26, 1980, in either a complete or partial withdrawal shall owe and pay withdrawal liability to the Plan, as determined under this Article and the Employee Retirement Income Security Act of 1974, as amended by the Multi-employer Pension Plan Amendments Act of 1980 ("ERISA").

(b)   For purposes of this Article, all corporations, trades or businesses that are under common control, as defined in ERISA and in regulations of the Pension Benefit Guaranty Corporation ("PBGC") are considered a single employer, and the entity resulting from a change in business form described in Section 4218(1) of ERISA is considered to be the original employer.

SECTION 2.   Complete Withdrawal Defined

(a)   The complete withdrawal of an employer occurs when the employer:

1.   permanently ceases to have an obligation to contribute under the Plan, or

2.   permanently ceases all covered operations under the Plan.

(b)   The date of the complete withdrawal of an employer is the date the employer's obligation to contribute ceased or the date its covered operations ceased, whichever is earlier.

(c)   For purposes of this section, a withdrawal is not considered to occur solely because the employer temporarily suspends contributions during a labor dispute involving its employees.

(d)   In the case of a sale of an employer, whether a withdrawal occurs shall be determined consistent with the applicable provisions of ERISA.

SECTION 3.   Amount of Liability for Complete Withdrawal

(a)   General.   The amount of an employer's liability for a complete withdrawal shall be its initial liability amount, reduced in accordance with subsection (h).  The amount shall be determined as of the end of the Plan Year preceding the date of the employer's withdrawal.

(b)   Initial Liability Amounts.   The initial liability amount:

1.   "Old" Employer.  In the case of an employer that was obligated to contribute for any part of the Plan Year ended December 31, 1979 and for any part of the period from September 26, 1980 through December 31, 1980, the sum of--

(A)   its proportional share of the balance of the Plan's unfunded vested liability as of December 31, 1979, plus

(B)   the sum of its proportional share of the balances of the changes in the Plan's unfunded vested liability and of the reallocated liability amounts for each Plan Year that ended after December 31, 1979 and before the date of the employer's withdrawal.

11

2.    New Employer.    In the case of any other employer, the sum of its proportional shares of the changes in the Plan's unfunded vested liability and of the reallocated amounts for each Plan Year that ended after December 31, 1979, and before the date of the employer's withdrawal.

(c)    Unfunded Vested Liability Defined

1.    For purposes of this Article, the term "vested benefit" means a benefit for which a participant has satisfied the conditions for entitlement under the Pension Plan (other than submission of a formal application, retirement, or completion of a required waiting period) whether or not the benefit may subsequently be reduced or suspended by a plan amendment, an occurrence of any condition, or operation of law and whether or not the benefit is considered "vested" or "nonforfeitable" for any other purpose under the Plan.

2.    The Plan's liability for vested benefits as of a particular date is the actuarial value of the vested benefits under the Plan, as of that date.    Actuarial value shall be determined on the basis of methods and assumptions approved by the Trustees for purposes of this Article, upon recommendation of the Plan's enrolled actuary.

3.    The unfunded vested liability shall be the amount, not less than zero, determined by subtracting the value of the Plan's assets from the Plan's liability for vested benefits.    The Plan's assets are to be valued on the basis of rules adopted for this purpose by the Trustees upon recommendation of the Plan's enrolled actuary.

(d)    The balance of the Plan's unfunded vested liability as of December 31, 1979 is the amount determined as of December 31, 1979 reduced by 5% of such amount for each succeeding complete Plan Year.

(e)    Annual Change in Unfunded Vested Liability.

1.    The change in the Plan's unfunded vested liability for a Plan Year is the amount (which may be less than zero) determined by subtracting from the unfunded vested liability as of the end of the Plan Year the sum of--

(A)    the balance (as of the end of the Plan Year) of the unfunded vested liability as of December 31, 1979, plus

(B)    the sum of the balances (as of the end of the Plan Year) of the changes in the unfunded vested liability for each Plan Year that ended after December 31, 1979 and before the Plan Year for which the change is determined.

2.    The balance of the change in the Plan's unfunded vested liability for a Plan Year is the change in the Plan's unfunded vested liability for that year reduced by 5% of such amount for each succeeding complete Plan Year.

(f)    Reallocated Liability Amount.    For each Plan Year ended after December 31, 1979 the reallocated liability amount is:

1.    Any amount of unfunded vested liability assigned to a withdrawn employer that the Trustees determine in the Plan Year to be uncollectible for reasons arising out of cases or proceedings under Title 11, United States Code, or similar proceedings;

2.    Any amount of unfunded vested liability that the Trustees determine in the Plan Year will not be assessed as a result of the limitations on liability described in Section 4209, 4219(c)(1)(B), or 4225

12

of ERISA against an employer to whom a notice of liability under Section 4219 of ERISA has been sent; and

3.    Any amount that the Trustees determine to be uncollectible or unassessable in the Plan Year for other reasons under standards not inconsistent with such regulations as may be prescribed by the Pension Benefit Guaranty Corporation.

The balance of the reallocated liability amount for a Plan Year is the reallocated liability amount for that year reduced by 5% of such amount for each succeeding Plan Year.

(g)    Apportionment of Unfunded Liability to Employer that has Withdrawn.

1.    "Old" Liability.  An employer's proportional share of the balance of the Plan's unfunded vested liability as of December 31, 1979 shall be determined by multiplying the balance of the Plan's unfunded vested liability as of that date by a fraction --

(A)    the numerator of which is the total contributions that the employer was obligated to make to the Plan for the 5 Plan Years ended December 31, 1979; and

(B)    the denominator of which is the total of employer contributions reported in the audited financial statements of the Plan for the 5 Plan years ended December 31, 1979, less any contributions otherwise included in that total made by any significant employer that was not obligated to contribute to the Plan in the period from September 26, 1980 to December 31, 1980, or had withdrawn from the Plan before September 26, 1980.

2.    Liability Changes and Reallocated Uncollectibles.    An employer's proportional share of the change in the unfunded vested liabilities and of the reallocated liability amount for a Plan year ending after December 31, 1979 shall be determined by multiplying each of those amounts, if any, as determined for a Plan year by a fraction--

(A)    the numerator of which is the total contributions that the employer was obligated to make to the Plan for the Plan year in which the change or reallocation arose and the four preceding Plan years ("Apportionment Base Period"); and

(B)    the denominator of which is the total adjusted employer contributions to the Plan with respect to the Apportionment Base Period, determined as follows:

(i)    The total contributions shall be all employer contributions actually received by the Plan in the Apportionment Base Period;

(ii) Notwithstanding paragraph (i), with respect to any Plan Year ended on or before December 31, 1979, the total employer contributions shall be as reported in the audited financial statements of the Plan for those Plan Years.  The total for any Plan Year ending after December 31, 1979 shall be reduced by the amount of any employer contributions included, consistent with these provisions, in any previous annual total;

(iii) The total adjusted employer contributions shall be the total employer contributions with respect to the Apportionment Base Period, determined under paragraphs (i) and (ii), reduced

13

by any contributions otherwise included in the total that were made by a significant employer that withdrew from the Plan in or before the Plan Year in which the change or reallocation arose, and by any other employer to which a notice of withdrawal liability was sent by the Plan within the Apportionment Base Period.

    3.    For purposes of the denominators of the fractions described in paragraphs (1) and (2), "significant employer" means--

    (A) an employer that contributed, in any one Plan Year of the relevant period, at least 1% of total employer contributions to the Plan for that year, as determined for purposes of the relevant denominator or, if lower, $250,000; and

    (B) any other employer that was a member of an employer association, a group of employers covered by a single collective bargaining agreement or a group of employers covered by agreements with a single labor organization, if the contribution obligations of substantially all members of the group ceased in a single Plan Year and the group's aggregate contributions to the Plan in any one Plan Year of the relevant period totalled at least 1% of total employer contributions to the Plan for that year or, if lower, $250,000.

    4.    Notwithstanding paragraphs (1) and (2), the numerators of the fractions described in those paragraphs shall not include contributions that the employer was obligated to make--

    (A) under a collective bargaining agreement for which there was a permanent cessation of the employer's obligation to contribute before September 26, 1980, or

    (B) for work performed at a facility at which all covered operations or the employer's obligation to contribute permanently ceased before September 26, 1980,

if and to the extent that the employer demonstrates that its total contribution obligation included contributions properly allocable to such a collective bargaining agreement or such work.

(h)    <u>Limitations on the Amount of Withdrawal Liability.</u>

    1.    <u>Deductible.</u> From the initial liability amount, there shall be deducted the lesser of:

    (A)    $50,000, or

    (B)    3/4 of 1 percent of the Plan's unfunded vested liability as of the end of the Plan Year preceding the employer's withdrawal,

less the excess of the initial amount over $100,000.

    2.    The amount of initial liability remaining after application of paragraph (1) shall be reduced, to the extent applicable, in accordance with Section 4219(c)(1)(B) of ERISA.

    3.    The amount of initial liability remaining after application of paragraph (2) shall be reduced in accordance with Section 4225 of ERISA, only if and to the extent that the employer demonstrates that additional limitations under that section apply.

    Section 4.    <u>Satisfaction of Withdrawal Liability.</u>

(a) Withdrawal liability shall be payable in installments, in accordance with Section 5. The total amount due in each 12-month period beginning on the date of the first installment shall be the product of --

    1. the highest rate at which the employer was obligated to contribute to the Plan in the period of 10 consecutive Plan Years ending with the Plan Year in which the withdrawal occurred, multiplied by

    2. the employer's average annual contribution base for the 3 consecutive Plan Years, within the 10 consecutive Plan Years ending before the Year in which the withdrawal occurred, during which the employer's contribution base was the highest,

except that the number of installment payments due in the final year shall be reduced to assure that the total payments will not exceed the employer's total amortized withdrawal liability.

(b) If, in connection with the employer's withdrawal, the Plan transfers benefit liabilities to another plan to which the employer will contribute, the employer's withdrawal liability shall be reduced in an amount equal to the value of the unfunded vested benefits that are transferred, determined as of the end of the Plan Year preceding the withdrawal on the same basis as the determination of the Plan's unfunded vested liability under Section 3.

Section 5.  Notice and Collection of Withdrawal Liability

(a)  General.  Notice of withdrawal liability, reconsideration, determination of the amortization period, and of the maximum years of payment shall be as provided in Section 4219 of ERISA and in this section.

(b)  Arbitration.  A dispute between an employer and the Plan concerning a determination of withdrawal liability shall be submitted to arbitration as provided in Section 4221 of ERISA, to be conducted in accordance with rules adopted by the Trustees not inconsistent with regulations of the Pension Benefit Guaranty Corporation.  No issue concerning the computation of withdrawal liability may be submitted for arbitration unless the matter has been reviewed by the Plan in accordance with Section 4219(b)(2) of ERISA and any Plan rules adopted thereunder.

(c)  Schedule of Payment.

    1.  Withdrawal liability shall be paid in equal monthly installments. Notwithstanding the pendency of any review, arbitration or other proceedings, payment shall begin on the first day of the month that begins at least 10 days after the date of notice of, and demand for, payment is sent to the employer. Interest shall accrue on any late payment from the date the payment was due until the date paid, at the rate described in Section (d)(2), below.

    2.  If, following review, arbitration or other proceedings, the amount of the employer's withdrawal liability is determined to be different from the amount set forth in the notice and demand, adjustment shall be made by reducing or increasing the total number of installment payments due. If the employer has paid more than the amount finally determined to be its withdrawal liability, the Plan shall refund the excess with interest at the rate used to determine the amortization period under subsection (a).

(d)  Default.

    1.  An employer is in default on its withdrawal liability if--

        (A)  any installment is not paid when due,

        (B)  the Plan has notified the employer of its failure to pay

the liability on the date it was due, and

(C) the employer has failed to pay the past-due installment within 60 days after its receipt of the late-payment notice.

2. Interest shall be charged on any amount in default from the date the payment was due to the date it is paid at an annual rate equal to the prime rate charged by the Bank of New York on the first day of the calendar quarter preceding the due date of the payment. For each succeeding 12-month period that any amount in default remains unpaid, interest shall be charged on the unpaid balance (including accrued interest) at the prime rate in effect on the anniversary date of the date as of which the initial interest rate was determined.

3. In the case of a default on withdrawal liability, the Plan may require immediate payment of some or all installments that would otherwise be due in the future.

4. In addition to the event described in paragraph (1), an employer is in default if circumstances, such as filing a petition under the Bankruptcy Code, indicate a substantial likelihood that an employer will be unable to pay withdrawal liability in the future.

(e) In any suit by the Trustees to collect withdrawal liability, including a suit to enforce an arbitrator's award and a claim asserted by the Trustees in an action brought by an employer or other party, if judgment is awarded in favor of the Plan, the employer shall pay to the Plan, in addition to the unpaid liability and interest thereon as determined under subsection (d)(2), liquidated damages equal to the greater of--

1. the amount of interest charged on the unpaid balance, or

2. 20 percent of the unpaid amount awarded.

The employer shall also pay attorney's fees and all costs incurred in the action, as awarded by the court. Nothing in this paragraph shall be construed as a waiver or limitation of the Plan's right to any other legal or equitable relief.

(f) **Prepayment.** An employer may prepay all or part of its withdrawal liability without penalty.

(g) The Trustees may adopt rules providing other terms and conditions for an employer to satisfy its withdrawal liability. Such rules shall be consistent with the purposes and standards of ERISA and shall not be inconsistent with regulations of the PBGC.

(h) **Other Terms and Conditions.** The Trustees may require that an employer post a bond, or provide the Plan other security for payment of its withdrawal liability, if --

1. the employer's payment schedule would extend for longer than 18 months;

2. the employer is the subject of a petition under the Bankruptcy Code, or similar proceedings under state or other federal laws; or

3. Substantially all of the employer's assets are sold, distributed or transferred out of the jurisdiction of the courts of the United States.

Section 6. **Partial Withdrawal.**

(a) **Definition.** Except as otherwise provided in this section, there

16

is a partial withdrawal by an employer on the last day of a Plan Year if for such Plan Year--

    1.    there is a 70-percent contribution decline, or

    2.    there is a partial cessation of the employer's contribution obligation.

    (b)    <u>Further Definition.</u>  For purposes of Subsection (a)--

    (1)(A)    There is a 70-percent contribution decline for any Plan Year if during each Plan Year in the 3-year testing period the hours on the basis of which the employer is obligated to contribute to the Plan do not exceed 30 percent of such hours for the high base year.

    (A)    For purposes of subparagraph A--

    (1)    The term "3-year testing period" means the period consisting of the Plan Year and the immediately preceding 2 Plan Years.

    (2)    The number of hours referred to in subparagraph (A) for the high base year is the average number of such hours for the 2 Plan Years for which they were the highest within the 5 Plan Years immediately preceding the beginning of the 3-year testing period.  The pertinent hours for Plan Years ended by December 31, 1978 shall be deemed to be equal to the employer's hours for the Plan Year ended December 31, 1979.

    (3)    Covered hours of work under a collective bargaining agreement with respect to which the employer's contribution obligation permanently ceased before September 26, 1980, or at a facility for which the employer permanently ceased all covered operations before September 26, 1980, shall not be taken into account if, and to the extent that, the employer demonstrates the number of hours allocable to such agreements or facility.

    (2)(A)    There is a partial cessation of the employer's contribution obligation for the Plan Year if, during such year--

    (1)    the employer permanently ceased to have an obligation to contribute under one or more, but fewer than all, collective bargaining agreements under which the employer has been obligated to contribute under the Plan but continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required or transfers such work to another location, or

    (2)    the employer permanently ceased to have an obligation to contribute under the Plan with respect to work performed at one or more, but fewer than all, of its facilities, but continues to perform work at the facility of the type for which the obligation to contribute ceased.

    (B)    For purposes of subparagraph (A), a cessation of obligations under a collective bargaining agreement shall not be considered to have occurred solely because one agreement that requires contributions to the Plan has been substituted for another such agreement.

(c) <u>Effective Dates.</u>

1.   Subsection (a)(1) above shall not apply to any Plan Year prior to January 1, 1983.

2.   Subsection (a)(2) above shall not apply to any cessation of contributions occurring before September 26, 1980.

(d)   <u>Partial Withdrawal - Amount and Payment.</u>   The amount of liability for a partial withdrawal and the total amount due in a 12-month period with respect to a partial withdrawal shall be pro rata shares of the amounts determined as if the employer had withdrawn completely, in a manner consistent with the applicable provisions of Sections 4206 and 4219 of ERISA.

Section 7.   <u>Liability Adjustments and Abatement.</u>

(a)   <u>Successive Withdrawals.</u>   If, after a partial withdrawal, an employer again incurs liability for a complete or partial withdrawal, the liability incurred as a result of the later withdrawal(s) shall be adjusted to the extent necessary to avoid duplication of liability.

(b)   <u>Abatement of Partial Withdrawal Liability.</u>   The liability of an employer for a partial withdrawal under Section 6(a)(1) shall be reduced or eliminated in accordance with Section 4208 of ERISA.

(c)   <u>Abatement after Renewed or Increased Participation.</u>   If an employer that has withdrawn from the Plan later renews the obligation to contribute, the unpaid balance of the employer's liability incurred on account of the earlier withdrawal shall be reduced in accordance with rules adopted by the Trustees pursuant to regulations of the PBGC.

Section 8.   <u>Mass Withdrawal.</u>

Notwithstanding any other provisions of this Article, if all or substantially all contributing employers withdraw from the Plan pursuant to an agreement or arrangement, as determined under ERISA Section 4209 and 4219(c)(1)(D), the withdrawal liability of each such employer shall be adjusted in accordance with those ERISA Sections.

Section 9.   <u>Notice to Employers.</u>

(a)   Any notice that must be given to an employer under this Article or under Subtitle E of Title IV of ERISA shall be effective if given to the specific member of a commonly controlled group that has or has had the obligation to contribute under the Plan.

(b)   Notice shall also be given to any other member of the controlled group that the employer identifies and designates to receive notices hereunder, in accordance with a procedure adopted by the Trustees.

Article VII

TERMINATION OF INDIVIDUAL EMPLOYERS

SECTION 1.   An Employer shall cease to be an Employer under this Trust Agreement whenever,

(a)   Any Employer Contribution or other payment required to be made by such Employer to or for the account of the Trust Funds or either of them shall not be paid when due, or

(b)   Such Employer no longer qualifies as an Employer as defined in Section 1 of Article I hereof.

18

SECTION 2. When, as provided in Section 1 of this Article VI, and Employer ceases to be an Employer hereunder,

(a) the Employees of such Employer shall after 60 days from said date cease to accrue benefits under the Pension Plan or Pension Trust Fund;

(b) such Employer shall have no further rights or powers under this Trust Agreement, except as hereinafter in this Article VI provided.

(c) if after termination of an Employer as a Contributing Employer and of Employee benefits hereunder, benefits are reinstated by the Trustees while the Employer is operating under Chapter XI of the Bankruptcy Act or under any other provision thereof, Employee benefits may be terminated by the Trustees without further notice to the Employer or the Employees immediately upon either cessation or delay in payment of contributions by the Employer in accordance with the schedule of payments upon which reinstatement is conditioned. Notice of termination required by law shall, however; be given to the Employer and the Employees but such notice shall not serve to extend benefits to the Employees except such benefits as are required to be extended by applicable law.

SECTION 3. An Employer who ceases to be an Employer hereunder for the reason stated in Section 1(a) of this Article VI, upon payment to the Trustees of all amounts then due from him, including any interest accrued thereon, and any expenses incurred in connection with his default, may be reinstated hereunder by the Trustees, and in such event the Employees of such Employer shall again be entitled to the benefits of this Trust Agreement, subject to such conditions as may be provided therefor in the Pension Plan.

SECTION 4. An Employer who ceases to be an Employer hereunder for the reason stated in Section 1(a) of this Article VI shall continue to remain fully liable for Employer Contributions or other payments due hereunder, and an Employer who ceases to be an Employer for the reason stated in Section 1(b) of this Article VI shall remain liable for any Employer Contributions or other payments which, under the circumstances, may be due to the Trustees under the Collective Bargaining Agreement and this Trust Agreement.

## Article VIII

### TERMINATION OF THE TRUST

SECTION 1. (a) The Trust may be terminated when there is no longer in force a Collective Bargaining Agreement between the Employers and the Union requiring any Employer Contributions to such Trust Fund for the purposes hereinabove provided.

(b) The Trust may be terminated at any time by the unanimous vote of all Trustees, with the consent of the Employers and the Union.

(c) In the event of termination of the Pension Fund the Trustees shall notify the Pension Benefit Guaranty Corporation as required by the Employee Retirement Income Security Act of 1974, as amended and shall allocate assets and take all other termination steps in conformity to said law.

SECTION 2. In the event of termination of the Trust the Trustees shall apply the Fund to pay or provide for the payment of any and all obligations of the said Trust and distribute and apply any remaining surplus in such manner as will, in their opinion, best effectuate the purposes of the said Trust; provided, however, that no part of the corpus or income of said Trust shall be used for or diverted to purposes other than the exclusive benefit of Employees, retired Employees, or the families or beneficiaries of Employees or retired Employees, or the administrative expenses of the Trust or the Pension Plan.

SECTION 3. Upon termination of the Trust, the Trustees shall forthwith

19

notify the Union and each Employer, and the insurance carrier or carriers of the policy or policies and all other necessary parties, and shall continue as Trustees for the purpose of winding up the affairs of the Trust, and may take any action with regard to any policy or policies which may be required by the insurance carrier or carriers of such policy or policies and which the Trustees, in their discretion, may deem appropriate.

## Article IX

### MISCELLANEOUS

SECTION 1.  Each Employer shall promptly furnish to the Trustees on demand any and all records of his Employees concerning the classifications of such Employees, their names, social security numbers, the amount of wages paid and hours worked, and any and all other records and information that the Trustees may require in connection with the administration of the Trust and for no other purpose.  Each Employer shall also submit in writing to the Trustees at such regular periodic intervals and in such form as the Trustees may establish such of the above data and information as may be requested by the Trustees.  The Trustees, or their authorized representatives, may examine and audit the pertinent books and records of each Employer whenever such examination or audit is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust.

SECTION 2.  (a)   No Employee or any person claiming by or through such Employee by reason of having been named a beneficiary in a certificate or otherwise shall have any right, title or interest in or to the funds or other property of the Trust Fund or any part thereof, except as specifically provided.

(b)   No money, property or equity or interest of any nature whatsoever in the Trust Fund or policies or benefits or monies payable therefrom shall be subject in any manner, by any Employee or person claiming through such Employee, to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempts to cause the same to be subject thereto shall be null and void.

SECTION 3.  No person, partnership, corporation or association dealing with the Trustees shall be obliged to see to the application of any funds or property of the Trust or to see that the terms of the Trust have been complied with or be obliged to inquire into the necessity or expediency of any act of the Trustees and every instrument effected by the Trustees shall be conclusive in favor of any person, partnership, corporation or association relying thereon that

(a)   At the time of the delivery of said instrument the Trust was in full force and effect;

(b)   Said instrument was effected in accordance with the terms and conditions of this Trust Agreement; and

(c)   The Trustees were duly authorized and empowered to execute such instrument.

SECTION 4.  Anything contained in this Trust Agreement, or any amendments hereof, or Pension Plan or any amendments thereof, to the contrary notwithstanding, no part of the corpus or income of the Pension Trust Fund shall be used for, or diverted to, purposes other than the exclusive benefit of the Employees, retired Employees, or the wives and children or beneficiaries of Employees or Retired Employees, or the expenses (including taxes) of the Trust Fund and the Pension Plan.

SECTION 5.  The Trustees shall have and maintain an office in the City and County of New York.  The Trustees may from time to time change the location of their office within the City and County of New York but no change shall be

effective until notice thereof shall have been given to the Union and employers.

SECTION 6.  The address of the Union and of each of the Employers shall be that stated on the signature pages of this Agreement and Declaration of Trust. The Union or Employer may change its address by written notice to the Trustees stating the new address, and such changed address shall be kept on file by the Trustees open to the inspection of any Trustee, Union or Employer.

SECTION 7.  Notices given to the Trustees, Union or Employers hereunder shall (unless herein otherwise specified) be sufficient if in writing and delivered to, or sent by postpaid first-class mail or pre-paid telegram to, the addresses thereof at his, their or its address above stated or changed as above provided.  Except as herein otherwise provided, distribution or delivery of any statement or document required hereunder to be made to the Trustees, Union or Employers shall be sufficient if delivered in person or if sent by postpaid first-class mail to his, their or its address above stated and changed as above provided.

## Article X

### AMENDMENTS

Subject to the provisions of Section 4, of Article VIII, this Trust Agreement may be amended in any respect from time to time by the Trustees, provided that each amendment shall be duly executed in writing by the Trustees and annexed hereto and a copy thereof distributed to the Union and to each Employer, and provided further, that no amendment shall alter the provisions of Section 7(a) of Article III, hereof, without the written consent of the Associations therein named (or such of them as may from time to time continue to exist) or the provisions of Article III, Section 7(b) hereof without the written consent of the Union.

As to any amendment duly adopted, the Trustees in their sole discretion shall have full power to fix the effective date thereof.

## Article XI

### EXECUTION OF AGREEMENTS
### SITUS OF TRUST

SECTION 1.  This Trust Agreement may be executed in one or more counterparts. The signature of a party on any counterpart shall be sufficient evidence of his execution thereof.  Upon the execution of this Trust Agreement by the Trustees, the Union and any Employer the same shall immediately become effective.

SECTION 2.  This Trust Agreement shall be deemed to have been executed and delivered in, and with reference to the laws of the State of New York, and it and the Trust established and created hereunder shall be governed by said laws except as to matters covered by Federal law. The Trustees shall be accountable only in the State of New York.

21

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the sixth day of March, 1995.

SIGNATURES OF PARTIES

Employer Trustees

(as of March 6, 1995)

Robert Greenes

Justin McCarthy

Paul Vermylen

Union Trustees

(as of March 6, 1995)

Bernard Pellegrino

Demos Demopoulos

LOCAL 553, affiliated with the
International Brotherhood of Teamsters,
265 W. 14th Street, New York, NY  10011

By: _____

Title: _____

Date: _____

EMPLOYER

By: _____

Title: _____ Exec VP _____

Address: _____ New York, NY _____

Date: _____ Sept 22 1995 _____

22