UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Demos P. Demopoulos, Steven Goldman,                    *
Michael N. Romita, John Jack Dresch and                 *
Robert B. Greenes: as TRUSTEES of the                   *
LOCAL 553 BENEFITS FUND; and as                         *
TRUSTEES of the LOCAL 553 PENSION                       *
FUND; and as TRUSTEES of the LOCAL                      *
553 DEFERRED COMPENSATION FUND,                         *
                                                        *          CV-07-09451 (DC)(MHD)
                                       Plaintiffs,      *
        - against -                                     *
                                                        *
MYSTIC TANK LINES CORP.,                                *
                                                        *
                                       Defendant.       *
------------------------------------------------------------X


PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT AGAINST DEFENDANT MYSTIC TANK LINES CORP.

## TABLE OF CONTENTS

Pages

INTRODUCTION ................................................................................. 1

ARGUMENT....................................................................................... 2

I.    MYSTIC CONCEDES LIABILITY FOR CONTRIBUTIONS
      OWED PURSUANT TO REMITTANCE REPORTS IT SUBMITTED
      TO PLAINTIFFS ........................................................................ 2

      A.    Mystic concedes that it owes contributions for the months of
            January, February, March, and April 2008 ......................... 2

II.   MYSTIC CONCEDES THAT IT OWES CONTRIBUTIONS IN
      THE AMOUNT OF $288,057.43 ................................................... 3

III.  MYSTIC OWES INTEREST FOR LATE AND UNPAID
      CONTRIBUTIONS ...................................................................... 4

      A.    Pursuant to the collective bargaining agreement, contributions
            are due on the 10th day of the month after the month the work
            was performed, not the 30th day.......................................... 4

      B.    The Court must accept the Trustees' interest calculation because
            Mystic has failed to submit any evidence showing that it is
            incorrect ............................................................................ 5

      C.    Mystic does not dispute that its contributions in 2007 were late,
            and it owes interest on those late payments ......................... 6

IV.   ERISA AND THE TRUST AGREEMENT PROVIDE FOR LIQUIDATED
      DAMAGES IN THE AMOUNT OF 20% OF THE AMOUNT OF UNPAID
      CONTRIBUTIONS ...................................................................... 7

CONCLUSION.................................................................................... 10

TABLE OF AUTHORITIES

Pages

AFL-CIO Hosp. & Nursing Home Council Pension Fund ex rel.
Boyens v. Manor Oaks Skilled Nursing Facilities, Inc.,
01-CV-99S, 2004 WL 1737189 (W.D.N.Y. July 29, 2004) ...................................... 10

Architectural and Ornamental Iron Workers Local Union No. 580
of the International Association of Bridge, Structural and Ornamental
Iron Workers v. JMB Corporation,
667 F. Supp. 134 (S.D.N.Y. 1987) .......................................................... 10

Brown v. Health Care & Retirement Corp. of Am., 25 F. 3d 90 (2d Cir. 1994) ....... 9

Chicago Truck Drivers v. El Paso CGP Company,
525 F. 3d 591 (7th Cir. 2008) ............................................................... 7

Ciminelli Constr. Co. v. Buffalo Laborers Supplemental Unemployment
Benefit Fund, 976 F. 2d 834 (2d Cir. 1992)................................................ 9

Engineers Joint Welfare, Pension, Supplemental Unemployment
Benefit and Training Funds v. Reape, 5:06-CV-1539,
2008 WL 2385908, (N.D.N.Y. June 9, 2008)............................................... 8

Farrell v. Metropolitan Relocations Inc., CV-95-0557,
1996 WL 19223 (E.D.N.Y. Jan. 11, 1996) ................................................. 7

Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989) ................................ 7

Iron Workers District Council of Western New York and Vicinity
Welfare and Pension Funds v. Hudson Steel Fabricators &
Erectors, Inc., 68 F.3d 1502 (2d Cir. 1995) .............................................. 3,9

La Barbera v. J.D. Collyer Equipment Corp., 337 F. 3d 132 (2d Cir. 2003).............. 4-5

La Barbera v. Modern Continental Construction Co., 07-CV-2051,
2008 WL 1909216 (E.D.N.Y. Apr. 30, 2008) ............................................ 8

Laborers Health and Welfare Trust Fund for Northern California v.
Advanced Lightweight Concrete Co., Inc., 484 U.S. 539 (1988)............................. 9-10

Local 348 Health & Welfare Fund v. Milmar Food Group, LLC,
CV-05-3459, 2006 WL 1025075 (E.D.N.Y. March 24, 2006)................................... 8

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
475 U.S. 574 (1986).................................................................................... 6

.

Pages

Mountbatten Surety Co., Inc. v. Kips Bay Cinemas, Inc.,
00Civ.0430, 2000 WL 1752916 (S.D.N.Y. Nov. 29, 2000) ....................................... 8

New York State Teamsters Conference Pension & Retirement
Fund v. United Parcel Service, Inc., 382 F. 3d 272 (2d Cir. 2004) ............................ 5

O'Shea v. First Manhattan Co. Thrift Plan & Trust,
55 F.3d 109 (2d Cir. 1995)........................................................................... 8-9

Scott v. Harris, __ U.S. __, 127 S. Ct. 1769 (2007)...................................................... 3, 6

Teamsters Joint Council No. 83 v. Centra, Inc., 947 F. 2d 115 (4th Cir. 1991)........ 7-8


Statutes and Rules

Fed. R. Civ. P. 54(d)(2).................................................................................. 1

Fed. R. Civ. P. 56(e)(2).................................................................................. 6

29 U.S.C. § 1132(g)(2)(C) ............................................................................. 7-9

29 U.S.C. § 1132(g)(2)(D) ............................................................................. 1

29 U.S.C. § 1145............................................................................................ 2-3, 9

## INTRODUCTION

Plaintiffs, the Trustees and Fiduciaries ("Trustees" or "Plaintiffs") of the Local

553 Pension, Benefits, and Deferred Compensation Trust Funds ("Funds"), submit this reply

memorandum of law in further support of their motion for summary judgment against Defendant

Mystic Tank Lines Corp. a/k/a Mystic Tank Lines, Inc. ("Mystic" or "Defendant"). The Trustees

are seeking contributions from Defendant for the months of January, February, March, April, and

May of 2008 pursuant to the Employee Retirement Income Security Act of 1974, as amended

("ERISA"), the Local 553 Pension Fund Amended and Restated Trust Agreement ("Trust

Agreement"), and the Collective Bargaining Agreement. The Trustees are also seeking interest

on both untimely paid contributions from 2007 and unpaid contributions from 2008, as well as

liquidated damages provided for under ERISA and the Trust Agreement.[1]

In its opposition brief to Plaintiffs' motion for summary judgment, Mystic

concedes that it is liable to the Funds for the payment of these contributions, and it concedes that

the amount of contributions owed is that which is demanded by Plaintiffs.

As discussed in detail, *infra*, although Defendant disputes both the amount of

interest it owes and its liability for liquidated damages, Plaintiffs demonstrate herein that

Defendant owes the amount set forth in Plaintiffs' opening papers -- $288,057.43 in

contributions, plus $14,177.06 in interest, and $57,611.49 in liquidated damages, for a total of

$359,845.98 (not including attorneys' fees and costs).[2]

---

[1] Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to the Trust Agreement and ERISA Section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D). In accord with Federal Rule of Civil Procedure 54(d)(2), Plaintiffs shall file an application for the recovery of attorneys' fees and costs within 14 days of entry of judgment. See Fed. R. Civ. P. 54(d)(2).

[2] As explained below, the Court must award Plaintiffs the full panoply of damages under Section 502(g)(2), including the contributions Mystic owes for May 2008.

<u>ARGUMENT</u>

I.    MYSTIC CONCEDES LIABILITY FOR CONTRIBUTIONS OWED PURSUANT TO
      <u>REMITTANCE REPORTS IT SUBMITTED TO PLAINTIFFS</u>

      A.    Mystic concedes that it owes contributions for the months of January, February,
             <u>March, and April 2008.</u>

           In its Opposition to Plaintiffs' motion for summary judgment, Defendant "admits

that it owes the unpaid contributions for the months of January through April 2008 in the

amounts set forth in said paragraph 8" of Plaintiffs' Statement of Material Undisputed Facts

Pursuant to Local Civil Rule 56.1 ("Plaintiffs' 56.1 Stmt."). (<u>See</u> Defendant's Response to

Plaintiffs' Statement of Material Undisputed Facts Pursuant to Local Civil Rule 56.1

("Defendant's 56.1 Stmt."), ¶ 8(a).) Further, Defendant concedes that it submitted remittance

reports for these months, yet did not pay the amount of contributions owed according to those

remittance reports. <u>Compare</u> Plaintiffs' 56.1 Stmt., ¶¶ 22-26 <u>with</u> Defendant's 56.1 Stmt., ¶¶ 22-

26; <u>see</u> Loc. Civ. R. 56.1(c) (facts in moving party's statement of material facts are deemed

admitted if not controverted in opposing statement).

           In sum, Mystic admits: (1) that it is a party to a collective bargaining agreement

that requires payment of contributions for hours worked; (2) that it worked hours for which it

owes contributions as listed in its remittance reports; and (3) that it did not pay contributions for

the hours it listed on its remittance reports. (<u>Compare</u> Plaintiffs' 56.1 Stmt., ¶¶ 6, 8(a), 10-12,

22-26, 29, <u>with</u> Defendant's 56.1 Stmt., ¶¶ 6, 8(a), 10-12, 22-26, 29; <u>see</u> Memorandum of Law in

Opposition to Plaintiffs' Motion for Summary Judgment ("Defendant's Brief"), p. 1.)

Accordingly, Mystic concedes that it has violated ERISA Section 515 because it is an

        employer who is obligated to make contributions to a multiemployer plan under
        the terms of the plan or under the terms of a collectively bargained agreement . . .
        [, who has failed to] make such contributions in accordance with the terms and
        conditions of such plan or such agreement.

29 U.S.C. § 1145; <u>Iron Workers District Council of Western New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.</u>, 68 F.3d 1502, 1508 (2d Cir. 1995) (employer who fails to meet its obligation to make contributions pursuant to ERISA Section 515 is liable under the statute). Therefore, there is no issue of material fact in dispute as to Mystic's liability for the unpaid contributions listed in its remittance reports, and the Court must grant summary judgment on liability to Plaintiffs.[3]

II.   MYSTIC CONCEDES THAT IT OWES CONTRIBUTIONS IN THE AMOUNT OF $288,057.43

Defendant "admits that it owes the unpaid contributions for the months of January through April 2008 *in the amounts set forth in said paragraph 8*" of Plaintiffs' 56.1 Statement (emphasis added). (Defendant's 56.1 Stmt., ¶ 8(a).) Paragraph 8 of Plaintiffs' 56.1 Statement provides that Plaintiffs are seeking unpaid contributions in the amounts of $70,905.49, $53,417.84, $53,376.37, and $48,153.71 for the months of January, February, March, and April 2008. (Plaintiffs' 56.1 Stmt., ¶ 8.) Accordingly, Defendant concedes that it owes these amounts in contributions.

Further, on or about June 12, 2008, Mystic submitted a remittance report to the Funds for May 2008 showing that it owes contributions of $62,204.02 for that month. (Second Declaration of Vikki Lefkowitz, dated June 30, 2008 ("Second Lefkowitz Decl."), ¶ 2, Exh. A.)

---

[3] By failing to offer any evidence in opposition to Plaintiffs' argument that their claims are encompassed by the Amended Complaint, Mystic concedes this issue. <u>Compare</u> Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment Against Defendant Mystic Tank Lines Corp. ("Plaintiffs' Brief"), pp. 7-8, <u>with</u> Defendant's Brief, *passim*. In fact, the only mention of this issue in Defendant's opposition papers is found in its 56.1 Statement, in which it states without any evidence that "the remittance reports for January through April, 2008 are not the subject of plaintiffs' complaint." (Defendant's 56.1 Stmt., ¶ 8.) By failing to submit more than this unsupported assertion, Defendant concedes this point as a matter of law. <u>See</u> Scott v. Harris, __ U.S. __, 127 S. Ct. 1769, 1776 (2007) (non-moving party must show more than mere speculation in order to successfully defeat a motion for summary judgment). Accordingly, the Court must dismiss this defense.

In accord with the arguments set forth at pages 4-6 of Plaintiffs' opening brief and Defendant's

concession that it owes the monies it reports in its remittance reports, Mystic owes Plaintiffs

$288,057.43 in contributions - $225,853.41 for January-April 2008 and $62,204.02 for May

2008.[4] (Compare Plaintiffs' 56.1 Stmt., ¶¶ 8, 11-12, 22-26, 29 with Defendant's 56.1 Stmt., ¶¶

8(a), 11-12, 22-26, 29; see Plaintiffs' Brief, pp. 4-6; Lefkowitz Decl., ¶¶ 12-16, Exhs. C-F;

Second Lefkowitz Decl., ¶ 2, Exh. A; Defendant's Brief, p. 1.)


III.    MYSTIC OWES INTEREST FOR LATE AND UNPAID CONTRIBUTIONS

      A.    Pursuant to the collective bargaining agreement, contributions are due on the 10th
            day of the month after the month the work was performed, not the 30th day.

          Mystic contends that it owes interest from the 30th day after the month at issue as

stated in the Trust Agreement, not the 10th day of the month as stated in the Collective

Bargaining Agreement. (Defendant's Brief, p. 5; Defendant's 56.1 Stmt., ¶ 18.) Mystic is

incorrect. In determining the contribution obligations of an employer, the collective bargaining

agreement controls and trustees of an ERISA-based fund cannot contradict these terms in their

own documents.

          In La Barbera v. J.D. Collyer Equipment Corp., 337 F. 3d 132 (2d Cir. 2003), the

Second Circuit invalidated a rule promulgated by trustees of a multiemployer plan because, inter

alia, the rule modified the "per-hours-worked" rules under the collective bargaining agreement.

Collyer, 337 F.3d at 137-39. In so holding, the Court noted that although trustees of a benefit

---

[4] Defendant claims that the correspondence received by its attorneys that refer to the unpaid contributions does not constitute "Notice" as defined by Article IX, § 7 of the Trust Agreement. Defendant's 56.1 Stmt., ¶ 9; see Declaration of Vikki Lefkowitz, dated May 30, 2008 ("Lefkowitz Decl."), Exh. B, Art. IX, § 7, p. 21. However, Defendant mistakenly interprets this section as requiring that notice be given to the Defendant at its business address. Id. In fact, this section merely states that such notice would be sufficient. In short, Article IX, § 7 of the Trust Agreement does not limit the type of notice, and Defendant's acknowledgment that it received the four letters detailing the monies it owes the Funds demonstrates that Plaintiffs' counsel mailing a letter to Defendant's counsel is sufficient notice. Defendant's 56.1 Stmt., ¶ 9.

fund are given broad discretion by both ERISA and a trust agreement (similar in substance to the one at issue here) to protect the assets of the fund, they are not free to modify the terms of a collective bargaining agreement. *Id.* In particular, the trustees were not free to vary a contract term pertaining to the "cost" of benefits. *Id.*; see New York State Teamsters Conference Pension & Retirement Fund v. United Parcel Service, Inc., 382 F. 3d 272, 283 (2d Cir. 2004) (affirming principle in Collyer that the written terms of a collective bargaining agreement supersede the rulemaking authority of a benefit fund).

The principle that Trustees cannot deviate from contract terms regarding the cost of benefits to an employer is applicable to the instant case. Here, the Collective Bargaining Agreement states that contributions are due on the 10th day of the month following the pertinent month. (Defendant's 56.1 Stmt., ¶ 10; Lefkowitz Decl., Exh. A, Memorandum of Agreement, ¶ (a).) The Trust Agreement has a different and later due date -- the 30th day. (Lefkowitz Decl., Exh. B, Art. V, § 1, p. 9.) As in Collyer, the 30-day rule set forth in the Trust Agreement must fall because it is in direct contravention of a clear requirement in a collective bargaining agreement pertaining to the cost of delinquent benefit fund contributions. Accordingly, Mystic's contributions are due on the 10th day, and interest due on any late contributions is calculated from that date.

B.     The Court must accept the Trustees' interest calculation because Mystic has failed to submit any evidence showing that it is incorrect.

Defendant next argues that Plaintiffs have not provided sufficient computations on which to base their calculation of interest. (Defendant's 56.1 Stmt., ¶ 27(a); Defendant's Brief, p. 6; see Lefkowitz Decl., Exh. G.) However, Defendant's argument fails because it did not submit any evidence to show that the chart is incorrect or insufficient. Defendant's 56.1 Stmt., *passim*; Defendant's Brief, *passim*.)

As an overarching issue, the interest chart provides more than sufficient information for Defendant to validate the accuracy of Plaintiffs' conclusions. It contains detailed calculations, including the date payment was received (if at all), hours worked, rate of payment per hour worked, amount of contributions, interest rate, interest amount, amount of time the contributions are late, and the total interest amount, as well as the total amounts of contributions and accrued interest. (Lefkowitz Decl., Exh. G.)

Further, as noted above, Defendant's objection to the Trustees' calculation of interest fails as a matter of law. In order to defeat a motion for summary judgment, an opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts". Scott, 127 S. Ct. at 1776; see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e)(2). Because Defendant has failed to support its conjecture about the accuracy of Plaintiffs' interest calculation, the Court must reject the challenge and grant summary judgment to Plaintiffs as to the amount of interest at issue.

C.    Mystic does not dispute that its contributions in 2007 were late, and it owes interest on those late payments.

Defendant claims that because it paid contributions for the months of June through December 2007, it does not owe interest on these contributions.[5] (Defendant's 56.1 Stmt., ¶ 27(d); Defendant's Brief, p. 6; Declaration of Salvatore Sammartano in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment, dated June 24, 2008 ("Sammartano Decl."), ¶¶ 4-5.) However, the trigger for when interest payments become due is not whether or not contributions have been paid, but whether or not they are timely paid. See Lefkowitz Decl., Exh. B, Art. V, § 4, p. 10. An obligation to pay benefit fund contributions is

---

[5] Defendant does not dispute that it paid the contributions late. Instead, in the Sammartano Declaration, Mystic stated that it paid its 2007 contributions, but neither provides the date of payment nor whether the contributions were paid on time. (Sammartano Decl., ¶¶ 4-5.)

not satisfied by merely paying the contributions in an untimely manner – the interest payment itself must also be made. *Id.*; Farrell v. Metropolitan Relocations Inc., CV-95-0557, 1996 WL 19223 (E.D.N.Y. Jan. 11, 1996) (Court must award trustees interest on late contributions, even though employer belatedly paid contributions). Accordingly, Defendant owes interest on the late contributions as calculated in the interest chart provided by Plaintiffs.[6] (Lefkowitz Decl., Exh. G.)

## IV.    ERISA AND THE TRUST AGREEMENT PROVIDE FOR LIQUIDATED DAMAGES IN THE AMOUNT OF 20% OF THE AMOUNT OF UNPAID CONTRIBUTIONS

Mystic attempts to avoid its statutory liability for liquidated damages by arguing that the liquidated damages provisions found both in ERISA and the Trust Agreement are not clearly defined, and that such damages represent a statutory penalty which must be strictly construed in favor of Defendant. (Defendant's 56.1 Stmt., ¶ 8(c), 28-29; Defendant's Brief, pp. 2-5.) Mystic is incorrect. First, Section 502(g)(2)(C) is routinely construed to provide for liquidated damages in the amount of 20% of the contributions. Second, if there is any ambiguity in the Trust Agreement text, the Court must defer to the Trustees' interpretation because it is not arbitrary and capricious, and such interpretation is in accord with the policies animating ERISA.

"ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans.'" Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989).[7] In accord with this strong public policy, Courts routinely enforce the mandate

---

[6] Defendant argues that it lacked knowledge that the interest payments for the late 2007 contributions payments were sought by Plaintiffs, as it claims that these interest payments were not the subject of Plaintiffs' motion for summary judgment. (Defendant's 56.1 Stmt., ¶ 27(c); Defendant's Brief, p. 2.) Here, Plaintiffs provided notice to Defendants of its obligation to pay interest on its late contributions in several letters and in the Amended Complaint. (Declaration of William K. Wolf, dated May 30, 2008 ("Wolf Decl."), Exh. A, ¶¶ 1, 12; ¶ 4 of Demands, Exh. C.)
[7] Chicago Truck Drivers v. El Paso CGP Company, 525 F. 3d 591, 605 (7th Cir. 2008) (Laws providing for the administration of multiemployer pension plans "should be broadly construed to effectuate [their] remedial purposes, which are to protect plan participants and the solvency of pension funds."); Teamsters Joint Council No. 83 v.

in ERISA Section 502(g)(2)(C) that a delinquent employer must pay liquidated damages in the amount of 20% of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C); see, e.g., Engineers Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds v. Reape, 5:06-CV-1539, 2008 WL 2385908, *3 (N.D.N.Y. June 9, 2008) (plaintiffs awarded liquidated damages in the form of 20% of the unpaid contributions); Local 348 Health & Welfare Fund v. Milmar Food Group, LLC, CV-05-3459, 2006 WL 1025075, *3-5 (E.D.N.Y. Mar. 24, 2006) (same); La Barbera v. Modern Continental Construction Co., 07-CV-2051, 2008 WL 1909216, *4 (E.D.N.Y. Apr. 30, 2008) (same).  Here, Plaintiffs request that the Court act in accord with this long-standing rule and the well-established policy of protecting benefit fund solvency and the interests of participants and award the Trustees liquidated damages in the amount of 20% of the unpaid contributions.

Moreover, Plaintiffs demand liquidated damages from Mystic based upon their interpretation of Article V, Section 4(c)(3) of their Trust Agreement, and the Court should defer to this interpretation because it is not arbitrary and capricious.  The well-established rule of law is if

> the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan . . . [, then] the courts will not disturb the administrator's decision unless it is arbitrary and capricious.

O'Shea v. First Manhattan Co. Thrift Plan & Trust, 55 F.3d 109, 111-12 (2d Cir. 1995).

Here, the Trust Agreement provides Plaintiffs with "the power to construe the provisions of this Trust Agreement and the terms used herein . . ." (Lefkowitz Decl., Exh. B, Art. IV, § 2, p. 5.)  Therefore, the Court must apply the arbitrary and capricious standard to the

---

Centra, Inc., 947 F. 2d 115, 123 (4th Cir. 1991) ("because ERISA [is a] remedial statute[ ], [it] should be liberally construed in favor of protecting the participants in employee benefits plans"); Mountbatten Surety Co., Inc. v. Kips Bay Cinemas, Inc., 00Civ.0430, 2000 WL 1752916, *9 (S.D.N.Y. Nov. 29, 2000) ("ERISA's [ ] provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights, even when small amounts are involved.").

Trustees' reading of the Trust Agreement, and should not overturn such decision unless "it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" O'Shea, 55 F.3d at 112; see e.g. Hudson Steel, 68 F.3d at 1508. (courts defer to adoption of 2% interest rate by trustees); Brown v. Health Care & Retirement Corp. of Am., 25 F.3d 90, 94 (2d Cir. 1994) (court upheld trustees' denial of refund of employer contributions); Ciminelli Constr. Co. v. Buffalo Laborers Supplemental Unemployment Benefit Fund, 976 F. 2d 834, 835-36 (2d Cir. 1992) (same).

　　　　The Trustees' interpretation of the Trust Agreement that delinquent employers must pay liquidated damages in the amount of 20% of the unpaid contributions is reasonable and in compliance with the legislative history of this section of ERISA. The Trust Agreement directly references ERISA Section 502(g)(2)(C), and the only rate set forth in that section is 20%. Thus, the only reasonable way to read the Trustees' reference to the statute is to calculate liquidated damages based on the 20% rate stated in the law. Mystic's alternative reading robs the Trust Agreement and the statute of meaning, and is contrary to Congress' intent in promulgating this section of ERISA. As the Supreme Court noted in its discussion of the legislative history of ERISA Sections 502 and 515 in Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., Inc., 484 U.S. 539 (1988):

> A plan sponsor that prevails in any action to collect delinquent contributions will be entitled to recover the delinquent contributions, court costs, attorney's fees, interest on the contributions owed and liquidated damages. The intent of this section is to promote the prompt payment of contributions and assist plans in recovering the costs incurred in collection with delinquencies.

<u>Advanced Lightweight</u>, 484 U.S. at 548 n. 15.[8] Accordingly, the Court should award Plaintiffs

liquidated damages in the amount of 20% of the amount of the unpaid contributions --

$57,611.49.[9]

CONCLUSION

For the reasons set forth herein and in their opening papers, Plaintiffs respectfully

request that the Court grant their motion for summary judgment.

Dated: July 2, 2008
        New York, New York

William K. Wolf (WW-7906)
Douglas L. Sanders (DS-4378)

FRIEDMAN & WOLF
1500 Broadway, Suite 2300
New York, New York 10036
(212) 354-4500
wwolf@friedmanwolf.com
dsanders@friedmanwolf.com

Attorneys for Plaintiffs

---

[8] The Court must reject Defendant's claim that the liquidated damages award under ERISA is a statutory penalty, and therefore the Court should not award it to the Funds. (Defendant's Brief, pp. 4-5.) Plaintiffs note that even where courts have referred to liquidated damages as a penalty, the damages have been awarded as a matter of course. See <u>Architectural and Ornamental Iron Workers Local Union No. 580 of the International Association of Bridge, Structural and Ornamental Iron Workers v. JMB Corporation</u>, 667 F. Supp. 134, 134-35 (S.D.N.Y. 1987) (liquidated damages awarded as appropriate under ERISA and in keeping with the Congressional intent of employee benefit funds minimizing costs and investing efficiently); <u>AFL-CIO Hosp. & Nursing Home Council Pension Fund ex rel. Boyens v. Manor Oaks Skilled Nursing Facilities, Inc.</u>, 01-CV-99S, 2004 WL 1737189, *4 (W.D.N.Y. July 29, 2004) (liquidated damages provisions are expressly provided for in ERISA, and are neither unconscionable nor arbitrary).

[9] This figure reflects the addition of the May 2008 contribution amount.